By the Court.—Sheldon, Ch. J.
Upon the trial the court was asked to decide that the assessment was and is illegal and void, because the city clerk did not lay the assessment roll and the objections filed thereto before the common council, and the council did not hear said objections before it confirmed the roll. The court refused so to decide and the plaintiff duly excepted.
It is not claimed by the defendant, that in fact, the objections were laid before the council, or that the council heard the objections; at least, no proof was introduced to substantiate those facts. But it is asserted that the record of the defendant’s proceedings *242 showed a substantial compliance with the provision of the charter. The record says that the city clerk re? ported to the council in open session, that objections had been filed in the office of the clerk, where the roll was filed. It certainly does not appear that either the roll or the objections were before the council, nor does his report or any proceeding intimate that they were before the council. The next order of business was a motion, made and carried, that interested parties be heard ; whereupon, no one appearing, the roll was, on motion, confirmed. The case states “ that the city clerk did not, in any other way or manner than as above stated, lay such roll or said objections to the confirmation thereof before the council, nor did the council in any other way or manner hear or consider such objections.”
Upon these facts, we cannot agree that the proceeding was a compliance with the statute,* or that any presumption exists that avoids the necessity of making proof that the terms of the statute have been obeyed. In fact, the very statement in the case is a full answer to the claim that the objections, in fact, were ever before the council; still less, that that body ever heard or in any manner considered them. This was a grave proceeding, to impose a large and onerous assessment upon lands for a local improvement. The objectors made and filed their objections to the assessment, which it was the duty of the council, as a constituted tribunal, to hear and consider, and determine upon their validity and sufficiency. The law contemplates no judgment by default in such a case. When the objectors had filed their objections, they had done all that was required of them, and the fact that they did not appear to argue the question, did not absolve the council from the performance of its duty. This *243 duty the objectors had a right to feel assured would-be patiently and thoroughly done and with deliberation, and when the objections had been thus heard and considered, the determination must be acquiesced in. It is idle to indulge in any presumption that such irresponsible bodies, whose general mode of proceeding is described in the opinion of the court in Clark v. Syracuse (13 Barb. 32), perform the duties imposed upon them by law, according to law. Their acts must be shown, and when it is shown that they have followed the statute under which alone they have authority to act, their decisions are entitled to consideration. In this case, the statute under which the proceeding was had, was in derogation of the individual rights of the plaintiff as they stood at common law, and it must be strictly construed and rigorously observed (Merritt v. Village of Portchester, 71 N. Y. 309 ; Hilton v. Bender, 69 Id. 75).
It must be observed that this case presents considerations of an anomalous character, requiring the most rigid application of the principles of law which, under the constitutional inhibitions protecting and defending property against the aggressions of the sovereign, are the sole reliance of the citizen. The original proceedings to grade and pave Forest avenue were judi-' cially pronounced irregular and void. A part of the work having been done, the intervention of the legislature was demanded, and the very remarkable legislative enactment passed, under which the assessment was made and confirmed, not in the interest of the taxpayers, who had resisted the whole matter, but in the interest of those who had illegally performed a portion of the work. That enactment authorized and empowered the common council to grade and pave the avenue, and declared that no preliminary proceedings, such as theretofore had been required by the charter to legally order all such improvements, need be taken before the *244 ordering of such grading and paving. While sweeping away all the other provisions of the charter as to preliminary proceedings, such as the application of the majority of the persons resident, whose land would be liable to be assessed, the consideration of the application and the hearing of those opposed, the certificate of the assessors, the notice of intention to order and its publication, the hearing and argument upon the question of ordering, and the vote of three-fourths of all the members elected to the council ordering the work, and which provisions had in some measure protected the owners of property, and not allowing a hearing or any process of law before the arbitrary and irrevocable ordering might be done, the enactment did provide that the assessment itself should be made in the manner theretofore provided by law for the making of local assessments for improvements of like character. And it happened that the law for making such local assessments did allow objections to the assessment to be filed, and that they should be heard by the council; and had it not so provided, there would not be the least pretense that these tax-payers could ever have been heard except in the judicial tribunals of the land, nor but what they would have been deprived of their property without due process of law (Stuart v. Palmer, Court of Appeals, N. Y., June 18, 1878, 7 N. Y. Weekly Dig. 203).
The tax-payers are not heard concerning the propriety or necessity or policy of the costly work which is to impose onerous burdens upon them, but are allowed that privilege of objecting to the mere mode of assessing that burden upon their property, under the just expectation that their, complaints, in this respect, at least, will be heard and considered. And now it is said that it will be presumed that their objections, the only appeal they were allowed to make, were heard, and that the salutary rules of the common law shall *245 not be observed. The power of taxation is one of the inherent powers of government, to be recognized by all tribunals, but it must be exercised in subordination to the • inhibitions and constitutional limitations which, rest upon its exercise (Davidson v. New Orleans, 6 Otto, 97 ; Stuart v. Palmer, supra).
We agree that a new trial should be had upon the considerations stated.
But I assert that not only was the enactment unconstitutional and void, in not providing for due process of law before the property of the citizen could be taken or charged or incumbered, but that it is incompetent for the legislature, in the exercise of the power of taxation, to charge the property of one citizen by a course of proceeding unknown to the common law, and differing from that by which the property of all other citizens is taxed or charged. The charter of the city of Buffalo provides certain proceedings and safeguards to be observed in and about all proceedings of the nature and kind under consideration. They apply to all streets and to all residents ; an equal burden, self-imposed, for the government and improvement of the municipality. This charter delegating to the people of Buffalo the right of self-government, is, and was intended to be, equal in degree for all, or it would never have been accepted. Each and every provision enures to the benefit of every citizen equally, protecting and burdening all equally ; and were it known that the rights or property of a single citizen were subject to a higher or less degree of immunity than his fellows, a proper sense of justice would correct the error. To say that one man’s property can, by special law, be taken or incumbered in a manner and by proceedings that do not apply to all, is tyranny, and revolting to the theory and sentiment of republican equality. If it is competent for the legislature thus to express its will in regard to property situated *246 upon the line of one of our highways, why is it not competent for it to prescribe laws differing from the general laws governing the rest of society, as to the personal privileges and liberties of those who own that same property, and wherein would then consist the assured safety and permanence of the constitutional rights of property or liberty ? Such an enactment is more like revolution than the administration of just and equal laws, and has no warrant in the law, or in the customs of our fathers.

 Quoted in the head-note.